Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following
FINDINGS OF FACT
1. Plaintiff, who is 33 years old, went to school 12 years but did not receive a diploma. Prior to working for defendant employer, he was a machine operator, warehouse worker, gas station attendant, and farmer.
2. Plaintiff began working for defendant employer in March 1989 and remained so employed through July 8, 1992, performing maintenance and repair on sealers, motors, and conveyor systems. That job required him to climb ladders, lift heavy objects, pull, and get under machinery.
3. Plaintiff sustained the admittedly compensable injury by accident giving rise hereto on July 8, 1992 when he experienced the onset of low back pain after he snatched, as hard as he could, a floor fan to lift it but it did not move and he twisted and arched backward. He later developed left hip and leg pain.
4. At defendant employer's direction, plaintiff was initially treated by Dr. Smith who referred him to Dr. Sweet, a neurosurgeon. Plaintiff remained under Dr. Sweet's care from July 22, 1992 through September 28, 1992 and received conservative treatment, including medications, physical therapy through Chandler Chiropractic, and about four weeks of work hardening for lumbosacral strain. Both a CT scan and an MRI were negative and although plaintiff initially had a considerable amount of lumbar muscle spasm and tenderness on examinations, by August 12, 1992 his complaints were far out of proportion to actual physical and x-ray findings. Plaintiff was not well motivated, and complained of excessive pain. In addition, he failed to give maximum effort and he exhibited symptom magnification during a functional capacity evaluation on August 17, 1992. He similarly did not give maximum effort and exhibited symptom magnification during the work hardening program from which he was discharged on September 15, 1992.
5. On September 15, 1992 Dr. Sweet released plaintiff to light-duty work beginning September 16, 1992. After examination on September 28, 1992 with findings of no back spasm, tenderness, or focal neurological deficits, he was released to return to regular work beginning October 5, 1992.
6. On September 16, 1992 plaintiff returned to work at a light-duty job which involved pushing buttons in order to route boxes on a conveyor line. After about three weeks, he was assigned his maintenance job but his regular duties were modified so that he only worked on sealer machines and he did not have to lift, pull, climb, do heavy work, or get under machinery.
7. Because plaintiff continued to complain of low back pain and left hip and leg pain after returning to work, he requested of defendant carrier that he be allowed to see a physician for treatment. Defendant carrier thereafter sent plaintiff to Dr. Hicks, an orthopedist. Plaintiff had no significant abnormality on examination by Dr. Hicks on October 27, 1992 but he did exhibit prominent pain behavior and a number of contradictory findings suggestive of functional overlay. Plaintiff also underwent psychological, physical therapy, and vocational evaluation on that date and he was placed on a two-week regimen of physical therapy by Dr. Hicks who thereafter followed him through December 15, 1992.
8. On December 14, 1992 a pentothal pain study which was recommended by Dr. Hicks established that plaintiff's pain was non-physiogenic and on December 15, 1992, Dr. Hicks released him to return to his regular job without restrictions on December 16.
9. On December 15, 1992 plaintiff gave Dr. Hicks' release to work note to his supervisor, Robert Tally, and on December 16, plaintiff and his supervisors Tally and Mike Shenk met. When asked by his supervisors whether he could perform his regular job, plaintiff told them that he felt that he could not and that he would be willing to try and work up to doing 100 percent of the duties. The supervisors then advised him that if he could not do 100 percent of the duties, they would have to put him on a personal leave of absence. Plaintiff, who had been working since September 16, 1992, last worked for defendant employer for a brief period of time on the morning of December 16 before the above referenced meeting with his supervisors. In June 1993, plaintiff was terminated from defendant employer because he had exhausted his personal leave and when plaintiff advised he could work with restrictions, he was told that there were no light-duty jobs available.
10. Upon referral from his attorney, plaintiff came under the care of Dr. William Lehman, Jr. on December 22, 1992. To date, plaintiff has not requested from the Commission approval of Dr. Lehman as his treating physician.
11. During the period from December 22, 1992 through December 6, 1993, plaintiff underwent examinations and diagnostic testing and received conservative care, including medications and physical therapy, from Dr. Lehman for treatment of complaints of low back pain with left leg radicular symptoms.
12. As a result of the injury by accident giving rise hereto, plaintiff sustained lumbosacral strain which rendered him unable to earn any wages in any employment from July 9, 1992 to September 16, 1992. From September 16, 1992 to October 5, 1992 plaintiff was able to perform light-duty work and since October 5, 1992 he has been able to perform the regular duties of his job as a maintenance man. Since October 5, 1992, his wage earning capacity has not been diminished due to the injury by accident giving rise hereto and the evidence to the contrary is not accepted as credible.
13. Plaintiff obtained maximum medical improvement from the injury by accident giving rise hereto and the treatment rendered therefore on October 5, 1992 and as a result of said accident, he retains one percent permanent partial impairment of the back.
14. Computing plaintiff's average weekly wage based on the Form 22, which reflects that he earned $17,869.38 during the 358-day or 51 and one-seventh week period from July 8, 1991 through July 8, 1992 (after deduction of the nine consecutive calendar days that he lost from work from October 29 through November 6) yields an average weekly wage of $349.40. Computing his average weekly wage based on the two page statement of earnings, which reflects he earned $17,636.71 during the 50 and five-seventh week period (after again deducting the nine consecutive calendar days) from July 5, 1991 through July 3, 1992 yields an average weekly wage of $347.77.
15. Computing plaintiff's average weekly wage based on the Form 22 which is based on his earnings during the period of 52 weeks immediately preceding the date of injury, less the nine consecutive calendar days lost from work, produces an average weekly wage of $349.40 which is fair and just to both parties.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As by statute provided, computing plaintiff's average weekly wage based on the Form 22 which reflects his earnings during the period of 52 weeks immediately preceding the date of injury, less the nine consecutive calendar days lost from work, produces an average weekly wage of $349.40 which is fair and just to both parties. His corresponding compensation rate is $232.94. N.C.G.S. § 97-2(5).
2. As a result of the injury by accident giving rise hereto, plaintiff was temporarily totally disabled from July 9, 1992 to September 16, 1992 for which he is entitled to compensation at the rate of $232.94 a week, less a credit to which defendants are entitled to by reason of having paid compensation to him at the rate of $184.54 per week pursuant to the Form 21 Agreement and Award. N.C.G.S. § 97-29.
3. Plaintiff obtained the end of the healing period from the injury by accident giving rise hereto and the treatment rendered therefore on October 5, 1992 and as a result of said accident, he retains one percent permanent partial impairment of the back for which he is entitled to compensation at the rate of $232.94 per week for a period of three weeks commencing on October 5, 1992. N.C.G.S. § 97-31(23).
4. Plaintiff's selection of Dr. Lehman to render treatment in his case was not authorized by defendants and he did not seek approval from the Commission for said treatment within a reasonable time after said selection. Defendants, accordingly, are not liable for the cost thereof. Moreover, the credible evidence fails to establish that said treatment was necessary in order to effect a cure, give relief, or tended to lessen the period of plaintiff's disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to counsel fee hereinafter approved, defendants shall pay compensation to plaintiff at the rate of $232.94 per week for the period from July 9, 1992 to September 16, 1992 and for a period of three weeks commencing on October 5, 1992, less a credit to which defendants are entitled to by reason of their having paid workers' compensation benefits to plaintiff in the amount of $184.54 per week. All of said compensation having accrued, it shall be paid in a lump sum without commutation.
2. A reasonable attorney fee in the amount of 25 percent of the compensation benefits payable herein is hereby approved for plaintiff's attorney. Said attorney fee shall be paid out of the accrued benefits and out of the benefits which will hereafter accrue by defendants making direct payment to plaintiff's counsel of every fourth week of compensation benefits payable under the terms of this Opinion and Award.
3. Defendants shall pay all medical expenses, excluding those of Dr. Lehman, which were incurred by plaintiff for treatment of the injury by accident giving rise hereto when bills for the same shall have been submitted through defendant carrier to the Industrial Commission and approved by the Commission.
4. Defendants shall pay the costs.
 S/ ______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN COMMISSIONER
S/ ______________________ RICHARD B. FORD DEPUTY COMMISSIONER
JRW/rch